UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SANDRA K. FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-01759-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Sandra K. Freeman is not disabled.

### Introduction

Ms. Freeman applied in January 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since January 1, 2004. A hearing was held on October 10, 2012, before administrative law judge Blanca B. de la Torre, at which Ms. Freeman and a vocational expert testified. Ms. Freeman requested additional time to submit updated medical evidence. The ALJ granted her request, and Ms. Freeman submitted about 1,000 pages of documents from Meridian Services. The ALJ then

held a second hearing on June 12, 2013, at which Ms. Freeman, Ms. Freeman's case manager at Meridian Services (Helen Woods), a medical expert (James M. Brooks, Ph.D.), and a new vocational expert testified.

Acting for the Commissioner of the Social Security Administration, the ALJ issued a decision on July 24, 2013, finding that Ms. Freeman is not disabled. The Appeals Council denied review of the ALJ's decision on September 3, 2014, rendering the ALJ's decision for the Commissioner final. Ms. Freeman timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Freeman contends the Commissioner's decision must be reversed and remanded because the ALJ erroneously evaluated the severity of her mental impairments and their effect on her functioning.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Freeman's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must shows he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Ms. Freeman is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other

kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she

3

is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Freeman was born in November 1962, was 41 years old as of the alleged onset of her disability in January 2004, and was 48 years old when she filed her application for benefits in January 2011. Ms. Freeman's disability paperwork stated her work history included about five years of work as a food preparer at a restaurant and about six years of work in a factory as a material handler. (*See* R. 29).

At step one, the ALJ found that Ms. Freeman had not engaged in substantial gainful activity since her application date.[1] At step two, the ALJ identified the following physical and mental impairments: residuals of left carpal tunnel release, alcohol abuse and dependence, bipolar disorder, borderline personality disorder, and reading, writing, and mathematics deficits. She found no listings were met or medically equaled, and then determined Ms. Freeman's residual functional capacity. She determined Ms. Freeman is capable of performing work within the light range, and included in the RFC a detailed description of Ms. Freeman's abilities and limitations consistent with her mental impairments:

> She is able to understand, remember, and carry out short, simple, repetitive instructions. She is able to sustain attention and

---

[1] Under the SSI program, a claimant who is found disabled cannot receive benefits for any period before the date of her application for benefits, regardless if her onset of disability was before her application date. *See* 20 C.F.R. § 416.335.

5

> concentration for 2 hour periods at a time and for 8 hours in the work day on short, simple, repetitive tasks. She can use judgment in making work-related decisions commensurate with that type of work. She requires an occupation where there is only occasional co-worker contact and supervision and no contact with the public. The occupation should have a set routine and procedures with few changes during the work day. She requires work with no unusual work stresses. She is limited to work that does not exceed her educational background: Reading at 4.0 grade level, Reading Comprehension at 2.7 grade level; Writing Composition at 2.5 grade level; Writing Mechanics at 2.7 grade level; Math Calculation at 4.0 grade level; and Math [A]pplication at 3.1 grade level.

The vocational experts testified that with these limitations, Ms. Freeman could not perform her past relevant work but there exist other jobs available in significant numbers in Indiana. (R. 114-116 (October 2012 hearing) and R. 79-81 (June 2013 hearing). The VEs identified the following jobs: assembler (DOT #706.687.010), machine tender (DOT #786.685-018), packer (DOT #753.687-038), bench assembler (DOT #706.684-022), laundry folder (DOT #369.687-018), and housekeeper (DOT #323.687-014). (*See* R. 31).

The ALJ credited the testimony of the vocational experts, and found at step five that Ms. Freeman is not disabled. (*Id.*).

## II.  Ms. Freeman's Assertions of Error

Ms. Freeman asserts the ALJ erroneously evaluated the severity of her mental impairments and their effect on her functioning. She argues the ALJ erred because the "medical and psychological evidence prov[ed] that her chronic mental problems rendered her totally disabled." (Dkt. 19 at p. 14

As addressed below, the court rejects Ms. Freeman's contentions. They are undeveloped and ignore the actual contents of the ALJ's decision and her reasoning.

## A. Ms. Freeman's reply brief eschews any argument based on a step three error.

In her opening brief, Ms. Freeman stated the ALJ "determined erroneously" that she did not meet or medically equal the four B criteria under Listing 12.04 (affective disorders), which requires findings that a claimant has "marked" limitations under two of the criteria or the existence of repeated episodes of decompensation along with marked limitation under one of the criteria. The B criteria are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The phrasing used by Ms. Freeman in her opening brief is a typical step three argument, and the Commissioner's response brief explained why the ALJ's step three analysis passes muster. In Ms. Freeman's reply brief, however, she said she is not arguing that her impairments met any listing: "Plaintiff did not argue that her impairments met any Listing. Plaintiff argued simply that the claimant was totally disabled due to bipolar disorder with psychotic features, anxiety and depression." (Dkt. 26 at p. 3).

The court takes her at her word. It also notes, however, that an argument that the ALJ's step three decision is not supported by substantial evidence would have been frivolous. The ALJ determined Ms. Freeman's limitations in daily living activities were mild, her difficulties with social functioning and maintaining concentration, persistence, or pace ("CPP") were moderate, and she had not suffered episodes of decompensation of extended duration. The decision reflects the ALJ's detailed analysis of the medical records, hearing testimony, and medical opinions in reaching these conclusions. Among the substantial evidence supporting the ALJ's

7

findings is the expert testimony at the hearing by psychologist James M. Brooks, who opined no listing was met or medically equaled. The court is satisfied the ALJ's decision at step three is supported by substantial evidence.

### B. Ms. Freeman's contention the evidence "proved" she is disabled improperly seeks the court's reweighing of the evidence.

In the absence of an alleged step three error, Ms. Freeman is left with the argument the RFC is flawed and did not account for all of her functional limitations due to her mental impairments. She asserts that the ALJ's development of the RFC, permitting her to work within its parameters, is flawed because the ALJ ignored certain evidence, "attempted to evade the well-established precedent of the treating physician rule," and "impermissibly failed to account for the quite severe functional limitations due to her mental impairments." (*Id.* at pp. 14-17).

Ms. Freeman complains in particular about the ALJ's evaluation of three documents, and asserts the ALJ should have found her disabled because of low GAF scores. The documents at the heart of Ms. Freeman's arguments are:

1. An October 29, 2012 Medical Source Statement of Ability to do Work-Related Activities (Mental) completed by Amy Carman, a case manager at Meridian Services, and signed by a physician at Meridian Services as "reviewed and approved" by him. (R. 444-446).

2. A February 6, 2013 Medical Source Statement of Ability to do Work-Related Activities (Mental) completed by Amy Carman, but not signed by a physician. This document is a repeat of the exact information appearing on the October 29, 2012 document. (R. 447-449).

3. A June 4, 2013 letter written by Starla J. Wing, an employment specialist with Meridian Services, which states she performed a job readiness assessment of Ms. Freeman and found her not ready for employment because of difficulties staying focused and understanding simple directions. (R. 1474).

8

The October 29, 2012 work-ability form, the contents of which are repeated on the February 6, 2013 work-ability form, evaluated Ms. Freeman (in a check-the-box format) as markedly impaired in 10 areas of work functioning, including understanding, remembering, and carrying out simple instructions and making simple work-related decisions, and interacting appropriately with co-workers, supervisors, and the public.

The ALJ was not required, of course, to view the evidence of Ms. Freeman's impairments and abilities in the same light as Ms. Carman, Dr. Diaz, or Ms. Wing. She was required only to address the pertinent evidence and provide a reasoned explanation for coming to the conclusions she did. The ALJ's decision reflects the accomplishment of these tasks consistent with SSA guidelines.

The ALJ's discussion of the mental health records and testimony at the hearing is detailed and thorough. She also provided a detailed explanation of her evaluation of the October 29, 2012 work-ability form completed by Ms. Carman and "signed off on" by Dr. Dez, and the February 6, 2013 work-ability form completed by Ms. Carman. She explained why she found the opinions expressed in these forms inconsistent with other evidence in the record, including evidence Ms. Freeman could take care of her personal hygiene on a regular and consistent basis (thus indicating an ability to focus and persist), had demonstrated an affect and mood that were "generally stable," and had been friendly and cooperative. (R. 28). She cited other evidence of Ms. Freeman's good social interaction with others, including

9

a boyfriend and family members, and in group therapy appointments. (R. 29). She also noted that in contrast to record evidence of Ms. Freeman's continual abuse of alcohol, the two forms state Ms. Freeman is in "partial" remission from alcohol abuse and her alcohol abuse does not contribute to her mental illness.

The ALJ also explained in detail her reasons for rejecting Ms. Wing's assessment that Ms. Freeman is not mentally prepared to work. (R. 28-29). She noted the assessment was not supported by the wealth of progress notes from Meridian Services, by observations a physician had made, or by Ms. Freeman's daily living activities. The ALJ stressed that although Ms. Freeman does have some difficulties in focusing and persisting at tasks, her abilities are greatly enhanced when she is not drinking and when she takes her medication. She noted Ms. Freeman has demonstrated the ability to concentrate "well enough to complete household chores and craft projects."

The ALJ's evaluation of GAF scores in the record is similarly rationally supported. For example, she noted that a score of 39 in October 2010 by Cornerstone was assessed when Ms. Freeman had been drinking. The 35 score assessed by Meridian Services at its initial intake was simply carried through on its records, despite progress notes of her improvement, particularly when Ms. Freeman complied with her medication regimen and did not drink. (R. 27).

The court can find no legal error in the ALJ's analysis of the evidence of Ms. Freeman's mental impairments or her determination of the RFC. Nor did the ALJ fail to discuss and account for any line of evidence detracting from her conclusions.

Because, as the ALJ found, the RFC is consistent with the demands of jobs available in significant numbers in Indiana, the court must affirm the Commissioner's decision that Ms. Freeman is not disabled.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Freeman is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated:  February 5, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system